# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| MCGARRY & MCGARRY, LLP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 16 CV 8914 |
| | ) | |
| BANKRUPTCY MANAGEMENT SOULTIONS, INC., | ) | Judge Joan H. Lefkow |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff McGarry & McGarry, LLP, filed a putative class action against Bankruptcy Management Solutions, Inc. (BMS), alleging a horizontal conspiracy to fix the manner of charging fees for its bankruptcy software services in violation of Section 1 of the Sherman Act (count I), as well as an identical claim of violation of the Illinois Antitrust Act, 740 ILCS 10/3 (count II).[1] BMS has moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). (Dkt. 26.) For the reasons stated below, the motion is granted.[2]

## BACKGROUND[3]

This case involves an alleged horizontal conspiracy among BMS, Epiq Systems, Inc., and TrusteSolutions, LLC—the three largest bankruptcy software providers in the United States—to

---

[1] The class is defined as "persons who received, or are entitled to receive, proceeds of an Estate that paid fees to BMS, excluding (a) trustees who have a contract with BMS, (b) creditors who have received 100% of their claim, (c) for the purposes of the second claim only, persons not entitled to assert a claim under the state statute identified in that claim, and (d) the judicial officers adjudicating the action and any member of their immediate families." (Dkt. 1 ¶ 93.)

[2] The court has jurisdiction under 28 U.S.C. § 1331. Venue is proper under 28 U.S.C. § 1391(b).

[3] Unless otherwise noted, the following facts are taken from plaintiff's complaint and are presumed true for the purpose of resolving the pending motion. *Active Disposal, Inc.* v. *City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011) (citation omitted).

fix the manner of charging fees for their services. When a debtor files a Chapter 7 petition in bankruptcy, an estate containing the debtor's property is created. (Dkt. 1 ¶ 11.) The Executive Office of the United States Trustee (EOUST), a division of the United States Department of Justice, then appoints a specific trustee to administer the estate.

Historically, BMS, the largest bankruptcy software provider, directed a trustee who wished to use its software to deposit all of an estate's funds with a partner bank. (*Id.* ¶ 19.) The partner bank would earn money from the deposit, paying interest to the estate as well as a fee to BMS.[4] (*Id.*) But as a result of the financial crisis of 2008, interest rates declined, and, not surprisingly, so did the partner bank's ability to pay BMS. (*Id.* ¶ 20.) In response, BMS decided to implement a new payment structure: it would sell bankruptcy software services only in combination with bankruptcy banking services, and it would charge a set percentage of the funds in the estate's bank account for those combined services. (*Id.*) For the new billing structure to succeed in the marketplace, however, BMS needed Epiq and TrusteSolutions to agree to sell their services in the same manner. (*Id.* ¶ 25.)

Sometime before 2011, BMS approached the two entities, and both agreed to implement a similar billing structure. (*Id.* ¶¶ 26–27, 55–56.) The plan, however, would potentially violate a EOUST rule that prohibited a trustee from using estate funds to pay bank fees, so the three conspirators appealed to the EOUST to suspend the rule, which it did in April 2011. (*Id.* ¶¶ 28–29.) With that barrier removed, BMS, Epiq, and TrusteSolutions put their conspiracy into motion.

In May 2011, Integrated Genomics, Inc., petitioned in Chapter 7 bankruptcy in this District. (*Id.* ¶ 42.) Eugene Crane was appointed trustee of the estate. (*Id.* ¶ 43.) At some point,

---

[4] The court infers that the interest paid to an estate was less than what would be paid to a normal commercial client.

Crane entered into a contract with BMS. (*Id.* ¶ 38.) As one condition of the contract, Crane agreed to deposit all (or substantially all) of the estate's funds with Rabobank, BMS's partner bank at the time. (*Id.*) Crane also entered into a contract with Rabobank, authorizing it to automatically withdraw a monthly fee from the Integrated estate's account. (*Id.* ¶ 40.)

McGarry, a law firm located in Chicago, was an unsecured creditor of the Integrated estate. (*Id.* ¶¶ 10, 46.) It received $12,472.55 of its allowed claim of $78,308.94. (*Id.* ¶ 46.) Following Crane's final account and distribution report filed in April 2014, McGarry learned that a $514.16 fee had been paid to Rabobank from the Integrated account. (*Id.* ¶¶ 47–48.) Rabobank paid most, if not all, of that amount to BMS. (*Id.* ¶ 49.) McGarry alleges that the amount of money paid to BMS was greater than the amount it would have received absent the alleged conspiracy, and without that overcharge, McGarry would have received a larger distribution from the Integrated estate.[5] (*Id.* ¶ 51.)

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges a complaint for failure to state a claim on which relief may be granted. In ruling on such a motion, the court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Active Disposal*, 635 F.3d at 886 (citation omitted). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also establish that the requested relief is plausible on its face. *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The allegations in the complaint must be "enough to raise a right to relief above the speculative

---

[5] The complaint includes additional allegations that are not pertinent to the disposition of the motion.

level." *Twombly*, 550 U.S. at 555. At the same time, the plaintiff need not plead legal theories; it is the facts that count. *Hatmaker* v. *Mem'l Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010); *see also Johnson* v. *City of Shelby*, 574 U.S. ----, 135 S. Ct. 346, 346, 190 L. Ed. 2d 309 (2014) (per curiam) ("Federal pleading rules call for 'a short and plain statement of the claim showing the pleader is entitled to relief'; they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." (citations omitted)).

**ANALYSIS**

BMS argues that McGarry's claims should be dismissed for four reasons: (1) the complaint does not allege sufficient facts to satisfy *Twombly*; (2) the alleged efforts by BMS to lobby for regulatory change are privileged pursuant to the *Noerr-Pennington* doctrine; (3) McGarry lacks antitrust standing; and (4) the claims are barred by waiver, res judicata, and bankruptcy law. Because McGarry's lack of antitrust standing is dispositive, the court does not address the other arguments.

BMS argues that McGarry is not a direct purchaser of its bankruptcy software services and therefore is barred from bringing an antitrust claim under *Illinois Brick Co.* v. *Illinois*, 431 U.S. 720, 97 S. Ct. 2061, 52 L. Ed. 2d 707 (1977).[6] *Illinois Brick* forbids "a customer of the purchaser who paid a cartel price to sue the cartelist, even if his seller—the direct purchaser from the cartelist—passed on to him some or even all of the cartel's elevated price." *Motorola Mobility LLC* v. *AU Optronics Corp.*, 775 F.3d 816, 821 (7th Cir. 2015), *cert. denied*, 135 S. Ct. 2837, 192 L. Ed. 2d 875 (2015). The reasoning behind this rule is twofold. First, because a direct

---

[6] McGarry's argument that *Illinois Brick* is no longer valid law goes nowhere. Until and unless the Supreme Court overrules *Illinois Brick*, it is binding on the court. *See Bosse* v. *Oklahoma*, 580 U.S. ---, 137 S. Ct. 1, 2, 196 L. Ed. 2d 1 (2016) ("Our decisions remain binding precedent until we see fit to reconsider them, regardless of whether subsequent cases have raised doubts about their continuing vitality.")

4

purchaser is entitled to the full recovery of any overcharge, allowing its customers (the indirect purchasers) to bring an antitrust claim "would create a serious risk of multiple liability for defendants." *Illinois Brick*, 431 U.S. at 730. Second, allowing indirect purchasers to sue in antitrust "would transform treble-damages actions into massive efforts to apportion the recovery among all potential plaintiffs that could have absorbed part of the overcharge, from direct purchasers to middlemen to ultimate consumers." *Id.* at 738. McGarry runs afoul of both lines of reasoning.

To begin, McGarry contends that the Integrated estate is the direct purchaser of BMS's services.[7] The Integrated estate therefore owned any antitrust claim and was entitled to one hundred percent of any overcharge. Were the Integrated estate and McGarry (and potentially other creditors) to bring claims against BMS, BMS could be subject to multiple liability. Although McGarry alleges that it is the only party that could bring an antitrust claim, this is not the case, as the Bankruptcy Code, 11 U.S.C. § 350, permits any interested party to move to reopen an estate. For example, a debtor may petition to reopen an estate specifically to investigate a potential antitrust claim. *See, e.g.*, *In re Indus. Marine Diesel, Inc.*, No. 92-20668, 1997 WL 33474937, at *4 (Bankr. S.D. Ga. Jan. 31, 1997) (reopening an estate to allow it to pursue an antitrust claim that was based on facts discovered after the bankruptcy case had closed).

McGarry also claims that there would be no need to apportion any recovery because the estate "passed on" one hundred percent of any injury it suffered to its creditors in the form of lower distributions. In *Illinois Brick,* the Court stated that if a direct purchaser had a preexisting

---

[7] McGarry alleges that Crane entered into a contract with BMS, but because the estate paid for the services, it is the direct purchaser. BMS argues that the direct purchaser is either the partner bank or the trustee, but for purposes of this motion, the court assumes that McGarry is correct.

5

cost-plus contract with an indirect purchaser, an indirect suit might be possible. 431 U.S. at 736. In that specific situation, the direct purchaser "is insulated from any decrease in its sales as a result of attempting to pass on the overcharge, because its customer is committed to buying a fixed quantity regardless of price." *Id*. That is, the direct purchaser suffers no injury. In the years since *Illinois Brick*, however, the Court has "made it clear that this exception would rarely apply, if indeed it could still be invoked at all." *In re Bulk Petroleum Corp.*, 796 F.3d 667, 677 (7th Cir. 2015), (citing *Kansas* v. *UtilCorp United, Inc.*, 497 U.S. 199, 110 S. Ct. 2807, 111 L. Ed. 169 (1990), *cert. denied sub nom. Kentucky Dep't of Revenue* v. *Bulk Petroleum Corp.*, 136 S. Ct. 1162, 194 L. Ed. 2d 175 (2016). McGarry cites no case where a party successfully invoked the exception.

In any event, the facts here are not analogous to a cost-plus contract because, unlike the direct purchaser in a cost-plus contract, the estate was injured by the overcharge: it had less in assets than before. To illustrate, if one assumes that a Chapter 7 estate is solvent after satisfying creditors, any remaining assets would return to the debtor. *See* 11 U.S.C. § 726(a)(6). If BMS overcharged a solvent estate, fewer assets would return to the debtor. Regardless of whether this occurred here, the Supreme Court has instructed that "even assuming that any economic assumptions underlying the *Illinois Brick* rule might be disproved in a specific case, we think it an unwarranted and counterproductive exercise to litigate a series of exceptions."[8] *Kansas* v. *UtiliCorp United, Inc.*, 497 U.S. 199, 217, 110 S. Ct. 2807, 2817, 111 L. Ed. 2d 169 (1990).

Finally, McGarry argues that it is not a purchaser in any respect; rather, it is a "distributee," (dkt. 28 at 12), and therefore *Illinois Brick* does not apply. This admission dooms

---

[8] Additionally, trying to determine the amount of damages "passed on" by the Integrated estate would be complicated by having to determine what percentage of the overcharge affected the trustee, whose compensation is tied to the amount of proceeds ultimately disbursed. *See* 11 U.S.C. § 326(a).

any argument for antitrust standing. McGarry seems to rely on *Loeb Indus., Inc.* v. *Sumitomo Corp.*, 306 F.3d 469 (7th Cir. 2002) and *Blue Shield of Virginia* v. *McCready*, 457 U.S. 465 (1982), for the proposition that, in some instances, a defendant can be liable in antitrust to a plaintiff to whom it does not sell. But McGarry offers no explanation as to how it is similarly situated to the plaintiffs in those cases; in fact, it offers no more than case citations and a single parenthetical sentence. The court notes that the *Loeb* and *McCready* plaintiffs were purchasers in markets affected by antitrust violations. McGarry, on the other hand, has participated in no market. Rather, it is simply a creditor of an estate that was injured by an antitrust violation. (Dkt. 1 ¶ 10.) The Seventh Circuit stated nearly three decades ago the accepted rule that "[m]erely derivative injuries sustained by employees, officers, stockholders, and creditors of an injured company do not constitute 'antitrust injury' sufficient to confer antitrust standing." *Sw. Suburban Bd. of Realtors, Inc.* v. *Beverly Area Planning Ass'n*, 830 F.2d 1374, 1378 (7th Cir. 1987). McGarry points to no case where a creditor brought an antitrust claim based on an injury sustained by its debtor. Additionally, as a trustee in bankruptcy owes a fiduciary duty to an estate's creditors, *Matter of Salzer*, 52 F.3d 708, 712 (7th Cir. 1995), the trustee could "pursue the debtor's claim against the defendant on behalf of all the debtor's creditors equally, without preference for any particular creditor. That injury is much more efficiently measured on behalf of the debtor, moreover, rather than in fortuitous segments claimed by those creditors who happen to sue." Phillip E. Areeda *et al.*, ANTITRUST LAW § 353c (4th ed. 2014).

**ORDER**

Accordingly, BMS's motion to dismiss (dkt. 26) is granted. McGarry's federal claim is dismissed with prejudice. The court declines to exercise supplemental jurisdiction over the state law claim, and it is dismissed without prejudice. This case is terminated.

7

Date: June 16, 2017

_____
U.S. District Judge Joan H. Lefkow